610 So.2d 363 (1992)
Jimmy Ray HOUSER
v.
BRENT TOWING COMPANY, INC.
No. 90-CA-425.
Supreme Court of Mississippi.
December 10, 1992.
Edward D. Lancaster, John P. Fox Law Firm, Houston, for appellant.
Warren Ashley Hines, Henderson Dantone & Hines, Greenville, for appellee.
Before DAN M. LEE, P.J., and PRATHER and McRAE, JJ.
McRAE, Justice, for the Court:
Jimmy Houser was injured while employed by Brent Towing Company, Inc., and sued for damages. The parties eventually settled the case, and Houser executed a release. Houser later filed a separate suit against Brent Towing Company seeking payment for an outstanding medical bill. The Circuit Court of Washington County granted summary judgment in favor of Brent Towing Company based on the written release and the doctrine of res judicata. Houser appeals, asserting that the Circuit Court erred in granting Brent Towing Company's motion for summary judgment and in refusing to consider certain evidence Houser produced in response to the motion.
Finding that Houser is bound by his written release, we affirm.

I.
On July 8, 1986, Jimmy Houser suffered a back injury in the course of his employment with Brent Towing Company. Houser sued the employer under the Jones Act, but the attorneys for the two parties eventually negotiated and verbally agreed upon a settlement. On June 11, 1987, Houser's attorney wrote a letter to Brent Towing Company's attorney in which he stated:
Mr. Houser has agreed to accept $160,000 in settlement of his claim for personal injuries... . I understand that the settlement funds will take not less than thirty (30) days to arrive... . I understand that until the settlement funds arrive, you will continue to pay maintenance and, also, that any medical expenses *364 heretofore incurred (including, of course, the travel expenses attendant to the medical treatment) will be paid. I do not expect that Brent would be responsible for the procedure proposed by Dr. McFadden and recommended by Dr. Evans (whereby the disc nucleus is suctioned out by needle), if this surgery is performed after settlement funds have been received.
On June 15, 1987, Brent Towing Company's attorney replied:
This is to confirm settlement of the claims of Jimmy Ray Houser and Gladys Vivian Houser for the full sum of $160,000.00 as a result of his injury... . I have written for the settlement funds and will forward them upon receipt, along with an appropriate Release and Order of Dismissal.
Enclosed with the letter was an advance check for $3,000.00.
On July 27, 1987, Houser's attorney sent another letter to Brent Towing Company's attorney expressing concern over Houser's failure to receive the settlement payment in a timely manner. He also stated:
I have placed a call for you this morning, and I am furnishing you this letter by hand-delivery, as I have not heard back from you. Mr. Houser is scheduled for surgery tomorrow morning by Dr. McFadden and, as I told you in my letter of June 11, Mr. Houser would be responsible for the expenses of this surgery if the case were settled prior to the time he had such surgery.
On July 28, 1987, Dr. John McFadden performed a percutaneous discetomy on Houser. Houser was billed $8,005.71 for the surgical procedure. Houser filed a second action (the instant suit) against Brent Towing Company on August 8, 1987, seeking to recover the cost of the July 28, 1987 surgery.
On August 13, 1987, Brent Towing Company made a partial payment of $136,000.00 toward settlement of the original suit. On that same day, Houser executed a release of liability which provided in part:
[F]or and in consideration of the full sum of ONE HUNDRED THOUSAND AND NO/100 ($160,000.00) DOLLARS, cash in hand paid by Brent Towing Company, Inc. to Jimmy Ray Houser and Gladys Vivian Houser, receipt of which is hereby acknowledged, and due acquittance and discharge therefor granted, as reflected by the Trustee check attached hereto as Exhibit "A", including copies of drafts totaling $136,000.00, with the balance of $24,000.00 to be paid upon receipt thereof, Jimmy Ray Houser and Gladys Vivian Houser do hereby release, and forever discharge Brent Towing Company, Inc., ... from any and all rights, claims, causes of action liens or remedies of whatever kind or nature which he or she now has or hereinafter acquired for damages or expenses arising out of Jimmy Ray Houser's employment and injury with Brent Towing Company, Inc., ... including past or future maintenance, cure or wages, or under any compensation statute, Federal or State, or under any contract or policy of insurance, and whether at law, in equity or in admiralty, an[d] whether the same be now known or hereafter discovered.
Brent Towing Company paid the outstanding settlement balance of $24,000.00 on September 11, 1987. Houser's attorney subsequently returned to Brent Towing Company the $3,000.00 advance less costs of maintenance. On September 16, 1987, the circuit court entered an order dismissing the original suit with prejudice.
Brent Towing Company filed a motion for summary judgment in the instant suit, on December 20, 1988, arguing (1) that the August 13, 1987, release covered the percutaneous discetomy for which Houser seeks recovery in the instant suit, and (2) that the September 16, 1987 dismissal of the original suit rendered the instant claim res judicata. Houser answered the motion for summary judgment by arguing that despite the language of the written release, the parties had intended that Brent Towing Company would pay, in addition to the sum certain specified in the settlement, all maintenance and medical expenses incurred prior to the payment of the settlement funds. Attached to the response were, inter alia, *365 an affidavit by Houser's attorney, the letters referred to above, and the outstanding medical bill for the percutaneous discetomy.
The circuit court held an evidentiary hearing on the motion for summary judgment. The court allowed the June 11, 1987, and June 15, 1987 letters into evidence but refused the July 27, 1987, letter. At the conclusion of the hearing, the court granted the motion for summary judgment. Houser subsequently perfected this appeal.

II.
The question we must resolve is simple: Can Houser avoid the clear and unconditional language of the written release by introducing extrinsic evidence of a contrary intent? The August 13 release unequivocally discharges any and all "damages or expenses arising out of Jimmy Ray Houser's employment and injury with Brent Towing Company, Inc., ... including past or future maintenance, cure or wages" in exchange for the $160,000.00 settlement. Houser maintains, however, that the June 11 and July 27 letters demonstrate that he intended to additionally hold Brent Towing Company responsible for the cost of his back surgery if the surgery occurred before Houser received the settlement proceeds.
It is axiomatic that the terms of a clear and unambiguous writing may not be varied by parol evidence. See Godfrey, Bassett & Kuykendall Architects, Ltd. v. Huntington Lumber & Supply Co., 584 So.2d 1254 (Miss. 1991); Clow Corp. v. J.D. Mullican, Inc., 356 So.2d 579 (Miss. 1978); Noble v. Logan-Dees Chevrolet-Buick Inc., 293 So.2d 14 (Miss. 1974). When Houser signed the August 13 release, all prior agreements, including any evidenced by the letters to which Houser refers, were merged into the writing. See Continental Gin Co. v. Freeman, 237 F. Supp. 240 (N.D.Miss. 1964).
We hasten to point out that Brent Towing Company may well have been obligated to pay for the July 28 surgery if Houser had not signed the August 13 release. The parties originally reached an oral settlement agreement some time between July of 1986 and June of 1987. Houser affirmed the agreement in writing by virtue of his June 11 and July 27 letters in which he asserted that the agreement included a promise on the part of Brent Towing Company to pay for Houser's back surgery in addition to the general settlement payment if the surgery occurred prior to receipt of the settlement payments. Brent Towing Company never disputed the additional burden.
We addressed an analogous situation in Taylor v. Firestone Tire & Rubber Co., 519 So.2d 436 (Miss. 1988). In Taylor, the plaintiff's attorney offered to settle her personal injury claim with defendant Firestone for $2,000.00. Firestone accepted the offer and forwarded to Taylor's attorney a check for $2,000.00 along with a release form. Taylor did not sign the release and never cashed the check. About a month later, Taylor's medical condition deteriorated. She subsequently returned to Firestone the unsigned release and uncashed check and demanded a minimum settlement of $18,000.00. This Court found that when Firestone's attorney accepted the original settlement demand of $2,000.00, Taylor became bound by her attorney and could not subsequently increase the demand.
Comparable circumstances appear in the instant case. The only significant difference is that in this case, it is the defendant, Brent Towing Company, who accepted a settlement term it now wishes to deny. In Taylor, it was the plaintiff who found herself stuck with a disadvantageous settlement agreement. What's good for the goose is good for the gander. Brent Towing Company implicitly accepted Houser's demand for payment of the costs of surgery by remaining silent after receiving Houser's letters of June 11 and July 27, 1987. If Houser had not subsequently signed a release relinquishing all claims apart from the $160,000.00 settlement, or if he had included some language in the release excluding the surgery from its coverage, Brent Towing Company would have been bound by an agreement to pay for the surgery in the event it occurred prior to *366 Houser's receipt of the settlement proceeds. By signing the unambiguous and unconditional release, however, Houser irretrievably surrendered his claim for payment of surgery expenses. Since Houser waived his right to collect for the surgery by executing the release, we affirm without finding it necessary to address the appellee's res judicata argument.
AFFIRMED.
ROY NOBLE LEE, C.J., HAWKINS and DAN M. LEE, P.JJ., and PRATHER, SULLIVAN, PITTMAN, BANKS and ROBERTS, JJ., concur.